**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**


JUDEAU S. BROWN, JR.,   :
          :
    Petitioner,   :
          :
   v.       :   Civil Action No. 21-200-JLH
          :
JOHN SEBASTIAN, Bureau Chief, and :
ATTORNEY GENERAL OF THE  :
STATE OF DELAWARE,   :
          :
    Respondents.[1]  :

_____

Judeau S. Brown, Jr.  *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____


**<u>MEMORANDUM OPINION</u>**


June 18, 2024
Wilmington, Delaware

---

[1]The Court has substituted Bureau Chief John Sebastian of Delaware's Bureau of Community Corrections for former Warden Robert May, an original party to the case.  *See* Fed. R. Civ. P.  25(d).

**Hall, District Judge:**

On February 12, 2021, Petitioner Judeau S. Brown, Jr. filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") while he was in custody at the James T. Vaughn Correctional Center. (D.I. 1.) The State filed an Answer in opposition, asserting that the Petition should be dismissed in its entirety as time barred and, alternatively, that individual claims should be denied as meritless and/or procedurally barred. (D.I. 38.) Petitioner filed a Reply, arguing that the doctrine of equitable tolling applies to his case, rendering his Petition timely filed. (D.I. 41.)

The case was reassigned to me on January 12, 2024. In a letter dated March 6, 2024, Petitioner informed the Court that he has been released to serve the home confinement portion of his sentence. (D.I. 54.) Although Petitioner is no longer in prison, the Court still has jurisdiction over the Petition because Petitioner was in custody when he filed it, and he is still subject to home confinement. *See, e.g., Obado v. New Jersey,* 328 F.3d 716, 717 (3d Cir. 2003).

For the reasons set forth below, the Court will dismiss the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

## I.   BACKGROUND

> [I]n August 2017, a grand jury indicted [Petitioner] and two co-defendants for first-degree assault, two counts of first-degree robbery, possession of a firearm during the commission of a felony ("PFDCF"), home invasion, and second-degree conspiracy. The charges arose out of a robbery that resulted in three people, including [Petitioner] and one of his co-defendants, being wounded by gunshots. On May 7, 2018, the day his trial was set to begin, [Petitioner] pleaded guilty to PFDCF and one count of first-degree robbery. The State agreed to dismiss the other charges. The parties agreed on immediate sentencing with the following recommended sentence: for first-degree robbery, twenty-five years of incarceration, suspended after four years (three of which were minimum mandatory) for decreasing levels of supervision; for PFDCF, three years of incarceration, the minimum mandatory

> sentence for that offense.  After completing a plea colloquy with
> [Petitioner], the Superior Court sentenced him in accordance with
> the plea agreement.  [Petitioner] did not file a direct appeal.

*Brown v. State*, 234 A.3d 159 (Table), 2020 WL 2847866, at *1 (Del. June 1, 2020).

On August 2, 2018, Petitioner filed a motion for sentence reduction in the Superior Court, which that court denied on August 20, 2018.  (D.I. 37-1 at Entry Nos. 28, 29.)  On April 15, 2019, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 37-1 at Entry No. 32.)  A Superior Court Commissioner issued a Report on October 3, 2019, recommending that the Rule 61 motion be denied.  (D.I. 37-1 at Entry No. 53; D.I. 37-11 at 18-27.)  The Superior Court adopted the Report and Recommendation on December 4, 2019, and denied the Rule 61 motion as meritless and procedurally barred.  (D.I. 37-1 at Entry No. 58; D.I. 37-11 at 16-17.)  *See Brown*, 2020 WL 2847866, at *1.  The Delaware Supreme Court affirmed that decision on June 1, 2020.  *See Brown*, 2020 WL 2847866, at *3.

On June 22, 2020, Petitioner filed a second Rule 61 motion and a Rule 33 motion for a new trial.  (D.I. 37-1 at Entry Nos. 68, 69.)  The Superior Court summarily dismissed the second Rule 61 motion on August 5, 2020, for being untimely and successive.  (D.I. 37-1 at Entry No. 76; D.I. 37-10 at 35-37.)  The Superior Court also denied the Rule 33 motion on August 5, 2020, because Petitioner's case had been resolved by a guilty plea and had not proceeded to trial.  (D.I. 37-1 at Entry No. 76; D.I. 37-10 at 36.)  On December 3, 2020, the Delaware Supreme Court affirmed the Superior Court's dismissal of Petitioner's second Rule 61 motion and Rule 33 motion.  *See Brown v. State*, 242 A.3d 1086 (Table), 2020 WL 7212719, at *2 (Del. Dec. 3, 2020).

On December 7, 2020, Petitioner filed in the Superior Court a motion for modification/reduction of sentence, which he resubmitted on January 25, 2021, after the Delaware

Supreme Court returned the record to the Superior Court.  (D.I. 37-1 at Entry Nos. 83, 86.)  The Superior Court denied that motion on February 16, 2021, as time barred and repetitive.  (D.I. 37-1 at Entry No. 87.)

In February 2021, Petitioner filed the § 2254 Petition presently pending before the Court. (D.I. 1.)  The Petition asserts thirteen Claims: (1) Petitioner has newly discovered evidence of his actual innocence (D.I. 3 at 11-15); (2) Petitioner was denied his Sixth Amendment right to counsel during arraignment, and defense counsel provided ineffective assistance by failing to raise that issue on direct appeal (D.I. 3 at 18-19); (3) defense counsel provided ineffective assistance by failing to assert that (a) the State committed prosecutorial misconduct by altering the plea agreement, (b) Rule 11 was violated during his plea proceeding, and (c) the trial judge committed errors during his proceeding (D.I. 3 at 20-27); (4) defense counsel provided ineffective assistance by failing to review the Truth-In-Sentencing form with him (D.I. 3 at 28-29); (5) defense counsel provided ineffective assistance by preventing and impeding Petitioner from understanding the applicable minimum mandatory sentences (D.I. 3 at 30-32); (6) defense counsel provided ineffective assistance during sentencing by failing to raise the issue of prosecutorial misconduct (D.I. 3 at 33-34); (7) & (8) defense counsel failed to argue that the plea colloquy was defective (D.I. 3 at 35-37); (9) defense counsel failed to file a direct appeal or motion to reduce sentence (D.I. 3 at 38-39); (10) defense counsel failed to interview a favorable witness and the prosecution's witness (D.I. 3 at 40-41); (11) defense counsel failed to argue that Petitioner's plea was involuntary (D.I. 3 at 42); (12) the State violated *Brady v. Maryland* by failing to disclose that the firearms examiner – Carl Rone – was charged with falsifying business records (D.I. 3 at 44-46); and (13) Petitioner was denied access to the law library and transcripts (D.I. 3 at 47-50).

On October 18, 2021, Petitioner filed in the Superior Court a petition for writ of prohibition to have the Superior Court nullify his plea agreement.  (*See* D.I. 37-17 at 12.)  The Superior Court dismissed the petition for lack of jurisdiction and as meritless on November 3, 2021.  (D.I. 37-17 at 12-16.)

On December 28, 2021, Petitioner filed in the Delaware Supreme Court an original petition for writ of prohibition directing the Superior Court to nullify his plea agreement.  (D.I. 37-16 at 1-2.)  The Delaware Supreme Court dismissed the petition on March 24, 2022.  *See Matter of Brown*, 275 A.3d 257 (Table), 2022 WL 881232, at *2 (Del. Mar. 24, 2022).

## II.   STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year limitations period for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling.

*See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory

4

tolling).  A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence.  *See Wallace v. Mahanoy*, 2 F. 4th 133, 151 (3d Cir. 2021) (actual innocence exception).

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D).  Therefore, the one-year limitations period began to run when Petitioner's conviction became final under § 2244(d)(1)(A).  Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the statute of limitations begins to run, upon "the expiration of the time for seeking [direct] review."  28 U.S.C. § 2244(d)(1)(A); *see Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).  Here, the Superior Court sentenced Petitioner on May 7, 2018, and he did not file a direct appeal. Consequently, Petitioner's judgment of conviction became final on June 6, 2018, the day on which the thirty-day appeal period expired.  Applying the one-year limitations period to that date, Petitioner had until June 6, 2019, to timely file a habeas petition.  *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, No. 14-383, 2015 WL 1906127, at \*3 n.3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date of the triggering event, namely, the date of finality). Petitioner, however, did not file the instant Petition until February 10, 2021,[2] approximately one year and eight months after that deadline.  Thus, the Petition is time-barred and should be

---

[2] The Petition is dated February 10, 2021, the envelope is postmarked February 11, 2021, and the Petition was docketed on February 12, 2021.  The Court will assume for purposes of this ruling that the petition was filed on February 10, 2021.

dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner has a credible claim of actual innocence excusing his untimely filing.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). An "application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998) (explaining that a properly filed application is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing"). If a state post-conviction motion was rejected by a state court as untimely, "that is the end of the matter" for § 2244(d)(2) purposes; the motion was not "properly filed" and does not statutorily toll AEDPA's limitations period.[3]   *Pace v. DiGuglielmon*, 544 U.S. 408, 414, 417 (2005); *accord Jenkins v. Sup't of Laurel Highlands*, 705 F.3d 80, 86 (3d Cir. 2013) (explaining that a state court dismissal of a state post-conviction motion as untimely "is the end of the matter" for purposes of § 2244(d)(2), "regardless of whether it also addressed the merits of the claim, or whether its

---

[3] In this case, although the Superior Court dismissed the second Rule 61 motion for being untimely and successive, the Delaware Supreme Court dismissed the Rule 61 motion as successive without addressing the issue of timeliness. If the Delaware Supreme Court had dismissed the second Rule 61 as untimely, that decision "would have been the end of the matter," thereby eliminating the Court's need to independently determine the timeliness of the second Rule 61 motion.

timeliness ruling was entangled with the merits"). Conversely, in the absence of a "clear indication" by the state courts that a post-conviction petition is untimely, the federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006); *accord Jenkins*, 705 F.3d at 86 ("[I]f a state court fails to rule clearly on the timeliness of [a post-conviction] application, a federal court must determine what the state courts would have held in respect to timeliness.") (cleaned up); *see also Carey v. Saffold*, 536 U.S. 214, 226-27 (2002) (remanding federal habeas petition for consideration of whether state petition was timely under California law and consequently "properly filed" for purposes of statutory tolling under § 2244(d)(2) where the California court had not clearly ruled on the timeliness of the state petition).

In this case, the limitations clock started to run on June 7, 2018, and ran for at least 56 days, until Petitioner filed his first Rule 35(b) motion for reduction of sentence on August 2, 2018. The Superior Court denied the Rule 35(b) motion on August 20, 2018, and Petitioner did not appeal that decision. The Court will therefore assume that Petitioner's first Rule 35(b) motion tolled the limitations period from August 2, 2018, through September 19, 2018, which includes a 30-day appeal period.

The limitations clock resumed no later than September 20, 2018, and ran at least 207 days, until Petitioner filed his first Rule 61 motion on April 15, 2019. The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision on June 1, 2020, subsequently denying reargument on June 30, 2020. *See Brown*, 2020 WL 2847866. The Court will assume that the first Rule 61 motion further tolled the limitations period from April 15, 2019, through June 30, 2020.

On June 22, 2020, Petitioner simultaneously filed in the Superior Court a second Rule 61 motion and a Rule 33 motion for new trial.  The Superior Court summarily dismissed the second Rule 61 motion as time-barred under Rule 61(i)(1) and as second or subsequent under Rule 61(d)(2) and denied the Rule 33 motion for new trial because Petitioner "pled guilty the same day the case was set for trial."  (D.I. 37-10 at 35-36.)  The Delaware Supreme Court affirmed the Superior Court's dismissal of both motions on December 3, 2020, holding that (1) Petitioner's allegation of actual innocence did not circumvent the Rule 61(d)(2) bar on successive Rule 61 motions because the actual innocence exception was only available if the movant was convicted after a trial, and (2) "Rule 33 plainly contemplates that the defendant must have had a previous trial before either a judge or jury."  *Brown*, 2020 WL 7212719, at *1-2.

The State contends that Petitioner's second Rule 61 motion was not properly filed for § 2244(d)(2) purposes because the Delaware Supreme Court summarily dismissed it under Rule 61(d)(2) for being a "second or subsequent" Rule 61 motion.  The State also contends that the Petitioner's Rule 33 motion for a new trial was not properly filed for § 2244(d)(2) purposes because the Delaware Supreme Court dismissed it as being an improper vehicle for Petitioner's claims on the basis that Rule 33 does not apply to defendants who entered a guilty plea.

The Court concludes that neither motion was properly filed under § 2244(d)(2), although not for the reasons advanced by the State.  Since the Delaware Supreme Court did not clearly rule on the timeliness of Petitioner's second Rule 61 motion and his Rule 33 motion, the Court must, as a threshold issue, determine if those motions were timely filed as a matter of Delaware law.  As explained below, they were not.

Pursuant to Rule 61(i)(1), a Rule 61 motion must be filed within one year after the defendant's judgment of conviction becomes final.  *See* Del. Super. Ct. Crim. R. 61(i)(1).  Because

Petitioner did not file a direct appeal, his judgment of conviction became final "thirty days after sentencing," on June 6, 2018. *Jackson v. State*, 654 A.2d 829, 832-33 (Del. 1995). *See* Del. Sup. Ct. R. 6(a)(iii) (a notice of appeal must be filed "[w]ithin 30 days after a sentence is imposed in a direct appeal of a criminal conviction"). Petitioner filed his second Rule 61 motion more than two years later, on June 22, 2020. Therefore, the Court concludes that Petitioner's untimely second Rule 61 motion was not properly filed for § 2244(d)(2) purposes and did not toll AEDPA's one-year limitations period.

As for Petitioner's motion for a new trial, Rule 33 explicitly requires a motion for a new trial based on the ground of newly discovered evidence to be filed "before or within two years after final judgment."[4] Del. Super. Ct. Crim. R. 33. Petitioner's judgment of conviction became final on June 6, 2018, which means he had until June 8, 2020[5] to timely file a Rule 33 motion premised on newly discovered evidence. Petitioner, however, filed his Rule 33 motion on June 22, 2020. Therefore, the untimely motion for new trial was not properly filed and does not statutorily toll the limitations period.

Because neither the second Rule 61 motion nor the Rule 33 motion for a new trial statutorily tolled the limitations period, the limitations clock resumed no later than July 1, 2020,

---

[4] The Court assumes for purposes of this decision that a Rule 33 motion for a new trial is an "application for State post-conviction or other collateral review" under § 2244(d)(2). *See, e.g., Evans v. Phelps*, No. 08-576, 2011 WL 781040, at *3 (D. Del. Feb. 28, 2011) (treating a Rule 33 motion for new trial as an application for collateral review under § 2244(d)(2)).

[5] The two-year period ended on June 6, 2020, which was a Saturday. Therefore, the filing deadline extended through the end of the day on June 8, 2020. *See* Del. Super. Ct. Crim. R. 45(a).

9

and ran the remaining 102 days without interruption until the limitations period expired on October 13, 2020.[6]

### B.  Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50.  With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect.  *Id.* at 651-52.  As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011).  An extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013).

Petitioner contends the limitations period should be equitably tolled because his delay in filing was due to inadequate law library access, delays in obtaining copies of documents from an outside entity, and his inability to obtain a copy of relevant transcripts.  (D.I. 1 at 15; D.I. 41.)  A prisoner's inability to obtain a copy of trial transcripts does not, on its own, warrant equitable tolling, and Petitioner has failed to explain how any alleged absence of a transcript actually

---

[6] Petitioner's other postconviction motions did not statutorily toll the limitations period because they were filed after the expiration of the limitations period.  For instance, Petitioner's second Rule 35 motion to reduce sentence was filed on December 7, 2020, and refiled on January 25, 2021, and his petitions for a writ of prohibition were filed on October 18, 2021, and November 3, 2021.

prevented him from timely filing the Petition. *See, e.g.,* B*unting v. Phelps,* 687 F. Supp. 2d 444, 448 (D. Del. 2009) (inability to obtain a copy of trial transcript and limited time in the prison law library do not entitle a petitioner to equitable tolling). A prisoner's limited access to a law library and related inconveniences – including a limited ability to make copies – are routine aspects of prison life, which also are generally insufficient to trigger equitable tolling absent a causal relationship between the limited library access and the prisoner's late filing. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003). The record in this case does not suggest a causal relationship between a delay in obtaining copies and the untimely filing. For instance, the record includes a copy request form from Petitioner dated April 22, 2020, that is stamped "received" by the library on June 9, 2020. (D.I. 4 at 245.) The copy request form indicates that 105 pages of copies were sent to Petitioner on June 10, 2020. (*Id.*) Even if the Court assumes that Petitioner sent the copy request form on April 22, 2020, rather than at some later point in time, Petitioner has failed to demonstrate how this approximate one and one-half month delay actually prevented him from filing a habeas petition before the expiration of the limitations period on October 13, 2020.

Petitioner also asserts that he was unable to visit the library in person and therefore submitted a paper request for a "writ habeas form" from the law library on June 8, 2020. (D.I. 41 at 4.) He explains that he did not receive a pre-printed § 2254 form until January 24, 2021, and contends that it was "impossible to file a petition on time" "without the form itself." (D.I. 41 at 4.) Petitioner attempts to demonstrate a causal relationship between the library's delay in providing the pre-printed § 2254 form and his late filing by highlighting the fact that, after receiving the pre-printed § 2254 form, he filed the instant Petition 17 days later, on February 10, 2021. (D.I. 41 at 4-5.)

11

Petitioner has provided a copy of the "Law Library General Request Form" he submitted, which includes his handwritten statement that he needs "a Writ Habeas Form and Forma Pauperis Form." (D.I. 41-1.)  Although the date on the request is "6/8/2020," the form is stamped "Received Jan. 20, 2021." (*Id*.)  There is also another section on the form which clearly indicates that the library received the form on January 20, 2021, and that the requested documents were sent on January 20, 2021. (*Id*.)  These dates suggest at least three possible scenarios: (1) Petitioner filled out the form on June 8, 2020, but did not send the request to the prison law library until January 2021; (2) Petitioner filled out and sent the request on June 8, 2020, but the prison library staff did not receive the request until January 2021; or (3) Petitioner sent an undated request and wrote "June 8, 2020" on the form after his request was fulfilled in January 2021.  Nevertheless, even if the Court were to accept Petitioner's statement that he sent the request for a  pre-printed § 2254 form in June 2020 and did not receive the form until January 2021, the Court is unconvinced that (1) the lack of a pre-printed § 2254 form constitutes an extraordinary circumstance, and (2) the lack of a pre- printed § 2254 form actually prevented him from timely filing a federal habeas petition within the 102 days that were remaining in the one-year limitations period at the time of his June 2020 request.  Petitioner could have filed in this Court an informal petition asking for federal habeas relief.  Thus, the lack of a pre-printed § 2254 form does not, on its own, warrant equitable tolling.

Petitioner asserts that he attempted to file a request for habeas relief in the wrong forum when, in June 2020, he sent a letter to this Court expressing his intent to "appeal" the Delaware Supreme Court's June 1, 2020, denial of his second Rule 61 appeal. (D.I. 41 at 6.)  Petitioner contends that his Petition "should be deemed timely filed on the date [his] letter was received on

June 15, 2020." (D.I. 41 at 6.)  The following summary of Petitioner's prison law library requests and filings in this Court provides information useful for analyzing Petitioner's contention.

On June 15, 2020, the Clerk's Office of this Court received a letter and other documents from Petitioner ("June 15, 2020 Submission").  There are three parts to Petitioner's June 15, 2020 Submission: (1) a letter dated June 12, 2020, stating that Petitioner was appealing the Delaware Supreme Court's June 1, 2020 denial of his second Rule 61 appeal within the applicable 14-day time period; (2) a form dated June 10, 2020, stating that he was providing notice of his *pro se* appeal to the "United States Court of Appeals" from the denial of his "appeal for PCRA"; and (3) a copy of the Delaware Supreme Court's June 1, 2020 Order affirming the Superior Court's denial of his second Rule 61 motion and Rule 33 motion.[7]  (*See* Exh. A.)  The Clerk's Office returned Petitioner's June 15, 2020 Submission to him on June 16, 2020, with a letter explaining "there is no procedure for appealing decisions of this kind to a federal district court."  (D.I. 41 at 4-5; D.I. 41-1 at 51.)

The record also contains a law library request from Petitioner dated June 10, 2020 – the same date as the June 15, 2020 Submission he provided to the Court – wherein Petitioner asks, "Do I need to file a notice of appeal to file a Writ Habeas Corpus?" (D.I. 4 at 247.)  The form also states that Petitioner needs an "appointment of counsel for Superior Court Kent County" and an "appointment of counsel for Writ Habeas Corpus in District Court of Delaware."  (*Id.*)  The library

---

[7] Because the record does not contain a copy of Petitioner's June 15, 2020 Submission to this Court, the Court retrieved the June 15, 2020 Submission from the Clerk's alpha files and has attached Petitioner's letter and appeal form from the June 15, 2020 Submission to this Opinion as Exhibit A.  The Court has not included a copy of the Delaware Supreme Court's Order in Exhibit A because that Order can be found in the state court record and on Westlaw.  (D.I. 37-13.)  *See Brown*, 2020 WL 7212719.

received the request on June 25, 2020, and sent both appointment of counsel forms to Petitioner

on June 26, 2020 – which was after the Clerk's Office returned Petitioner's June 15, 2020

Submission. (*Id.*)  Petitioner does not assert that he did not receive the appointment of counsel

form for the Delaware District Court on or around June 26, 2020, nor does he assert that he did not

receive the Clerk's Office letter with the returned June 15, 2020 Submission in or around the end

of June 2020.

The Court acknowledges its obligation to liberally construe *pro se* filings.  *See Royce v.

Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).  Nevertheless, Rule 2(d) of the Rules Governing Section

2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, requires a petitioner to

prepare a "petition [which] substantially follow[s] either the [pre-printed habeas petition] form or

a form prescribed by a local district-court rule."  The fact that Petitioner's June 15, 2020

Submission to this Court does not include the information required by Rule 2(c)[8] provides

sufficient reason for not construing his June 15, 2020 Submission as a habeas request.  *See* Rule

2(c), 28 U.S.C. foll. § 2254.

Additionally, the totality of the circumstances surrounding Petitioner's filing of the June

15, 2020 Submission do not justify construing that Submission to be an informal habeas request.

Petitioner's question to the law library – "Do I need to file a notice of appeal to file a Writ Habeas

Corpus" – demonstrates he understood the difference between an appeal and a habeas proceeding,

---

[8] Rule 2(c) provides that the petition must:
   (1)  specify all grounds for relief available to the petitioner;
   (2)  state the facts supporting each ground;
   (3)  state the relief requested;
   (4)  be printed, typewritten, or legibly handwritten; and
   (5)  be signed under penalty of perjury by the petitioner or by a person authorized to sign for the petitioner under 28 U.S. § 2242.

14

and his request for an appointment of counsel form for *a writ of habeas corpus in the District Court of Delaware* demonstrates his understanding of how and where to request habeas corpus relief.  At a minimum, upon receiving the returned June 15, 2020 Submission and letter from the Clerk's Office, Petitioner could have sent a new submission clarifying that he was pursuing federal habeas relief if, in fact, that was his true intent.  Importantly, Petitioner does not allege that he filed in this Court (and the record does not contain) a request for habeas relief or a motion for appointment of counsel with respect to a habeas request between June 16, 2020, and February 10, 2021.[9]  To the extent Petitioner's late filing was due to a mistake or miscalculation of the one-year filing period, such a mistake does not warrant equitably tolling the limitations period.  *See Taylor v. Carroll*, No. 03-07, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004).  Thus, the Court declines to equitably toll the limitations period as of June 15, 2020, because Petitioner has failed to demonstrate the existence of an extraordinary circumstance and/or that he exercised reasonable diligence in attempting to pursue habeas relief from this Court.

### C.  Actual Innocence

A credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period.  *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Wallace*, 2 F.4th at 150-51.  "[A]ctual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).  A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence; and (2) showing "by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.*, a reasonable juror would have reasonable doubt

---

[9]After filing the instant Petition on February 10, 2021, Petitioner filed a pre-printed motion for appointment of counsel form on May 18, 2021.  (*See* D.I. 10)

about his guilt) in light of the new evidence." *Wallace*, 2 F.4th at 151.  Although this standard "does not require absolute certainty of guilt or innocence, [] it is demanding and will be satisfied only in rare and extraordinary cases where the evidence of innocence is so strong that it undermines confidence in the trial's outcome." *Id*.

Petitioner asserts that Frank Pope is a "newly discovered" witness at the prison where Petitioner was previously housed who can provide an eyewitness account establishing Petitioner's innocence.  (D.I. 3 at 15.)  Petitioner has presented a written statement from Pope dated April 21, 2020, wherein Pope asserts he was a witness at the scene of the robbery on April 17, 2017.  Pope states that (1) he was walking by an apartment building when he saw Petitioner run out of the building with blood running down his leg, (2) Petitioner did not have a gun, (3) Petitioner sped away in a sky-blue car, and (4) Pope heard more gunshots after Petitioner had left the area.  (D.I. 37-10 at 3.)  Pope explains that he ran away, but upon realizing that he had dropped his wallet, he returned to the building and saw two black males lying on the ground bleeding.  (*Id*.)  Pope does not explain why he did not come forward with any of this information prior to April 21, 2020, and the Court notes that Pope's statement is sworn but not notarized.  (*Id*.)

Petitioner alleges that Pope's evidence is "new" because he did not encounter Pope until April 2020, the evidence is reliable because it is consistent with police reports, and the evidence "completely exonerate[s Petitioner] from being in possession of a firearm and demonstrates that [Petitioner] fled the scene before [his co-defendant and the victim] were shot."  (D.I. 3 at 11.)  Contrary to Petitioner's contention, the information in Pope's statement fails to establish a gateway claim of actual innocence.  The first problem standing in the way of Petitioner's actual innocence claim is that he pleaded guilty to the offenses he now says he is actually innocent of.  The second problem is that the statement is not reliable because it originated from another inmate, concerns

16

circumstances that occurred three years prior to the date on the statement, does not explain why Pope waited three years before coming forward, and recites facts available in police reports that were provided to Petitioner during discovery. *See Milton v. Sec'y Dep't Corr.*, 347 F. App'x 528, 531 (11th Cir. 2009 (affidavits from fellow inmates were not sufficiently reliable evidence to support an actual innocence claim); *cf. Taylor v. Illinois*, 484 U.S. 400, 414 (1988) ("It is . . . reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed.").

Yet another problem is that Pope's statement does not establish Petitioner's factual innocence, or even that he did not have a gun, because two witnesses who were interviewed (before Petitioner pleaded guilty) were willing to testify that Petitioner had a gun just before and during the incident. (*See* D.I. 37-3 at 76-78, 87, 109.) One of those witnesses was the victim, who was also willing to testify that Petitioner shot him. (*Id.*) Given these circumstances, Pope's statement does not establish that it is more likely than not that no reasonable juror would have convicted Petitioner even in light of the information in the statement. Thus, Petitioner has not presented a gateway claim of actual innocence sufficient to excuse his untimely filing.

Accordingly, the Court will dismiss the Petition as time barred.

## III.    PENDING MOTION

Petitioner has filed a Motion for Status Conference to discuss the status of his habeas request. (D.I. 55.)  The Court's dismissal of the Petition eliminates the need for a status conference. The Court will dismiss the motion as moot.

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the Petition is time barred.  In the Court's view, reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability.  An appropriate Order will be entered.

EXHIBIT A

Dear To Whom May Concern,

The Delaware Supreme Court, denied the appellant's appeal from PCRA denial in Superior Court, on June 1, 2020. The appellant recieved the Delaware Supreme Courts decision, via legal mail, at JTVCC, on June 5, 2020. The appellant's 14 day time limit to file notice of appeal expires on June 19, 2020. The appellant has place the notice of appeal hereof, in the mail on June 12, 2020. Any delay in the courts recieving the notice of appeal, was not in the power of the appellant.

In God We Trust
&
Respectfully & Humbly Submitted,

Date: June 12, 2020
6:25 pm

Judea Brown Jr

Judeau Brown Jr.
SBI # 00680156
JTVCC
1181 Paddock Rd.
Smyrna, DE 19977


FILED

JUN 15 2020

US DISTRICT COURT
DISTRICT OF DELAWARE

(Del. Rev. 05/2014) Pro se Notice of Appeal

# NOTICE OF APPEAL
## TO
## U.S. COURT OF APPEALS, THIRD CIRCUIT

U.S. District Court for the District of Delaware

**APPEALS COURT
CASE NUMBER:**
(To be assigned by Appeals Court)

FULL CAPTION IN DISTRICT COURT AS FOLLOWS:

**DISTRICT COURT**
Civ. Action No.: _____

Judeau S. Brown Jr.

v.

State Of Delaware

**DISTRICT COURT
JUDGE** _____

Notice is hereby given that ___Judeau S. Brown Jr.___,
(Named Party)

who proceeds pro se, appeals to the United States Court of Appeals for the Third Circuit from

[X] Judgment, [ ] Order, [ ] Other (specify) __Denial of appeal for PCRA__

entered in this action on _6 | 1 | 2020_ .
(date)

Dated: _6/10/2020_

_____ (Signature)

__Judeau S. Brown Jr.__
(Print Name)

__1181 Paddock Rd.__
(Address)

4

Smyrna, DE 19977
(City, State,  Zip Code)

N/A
(Telephone Number)